## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kendall Nygard,

       File No. 22-CV-03191 (JMB/DTS)

       Plaintiff,

v.

       **ORDER**

City of Orono, *a Minnesota municipality*,

       Defendant.

Erick G. Kaardal, Gregory M. Erickson, and Elizabeth A. Nielsen, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, for Plaintiff Kendall Nygard.

Jared D. Shepherd and John Stephen Brooksbank, Campbell Knutson P.A., Eagan, MN, for Defendant City of Orono.

This matter is before the Court on Defendant City of Orono's (City) motion for summary judgment (Doc. No. 34) on Plaintiff Kendall Nygard's sole claim against it of malicious prosecution. In this action, Kendall Nygard[1] alleges that the City maliciously prosecuted her for violations of the Orono City Code (Code). For the reasons explained below, the Court grants the City's motion and dismisses this action.

---

[1] The Court frequently references both Kendall Nygard and her husband Jay Nygard throughout this Order. Despite the informality of such a practice, each of the Nygards will be referenced by their first names throughout this order for the sake of clarity.

## BACKGROUND AND STATEMENT OF UNDISPUTED FACTS

### A.    Relevant Provisions of the Code

In this action, Kendall alleges that the City initiated a malicious prosecution against her for an alleged violation of section 86-66(b) of the Code.  (*See* Doc. No. 1.)  The Code requires that, before certain work is performed on a property, a zoning permit must be obtained "by the individual performing the work," as follows:

> A land alteration and hardcover plan shall be submitted with the site plan or certified site plan and incorporated as part of the building permit approval, including the name of the individual performing the work.  If no building permit is necessary, a separate zoning permit application for hardcover and/or land alteration shall be submitted *by the individual performing the work* prior to conducting any land alteration or hardcover installations in a property, including grading, patios and retaining walls.  The zoning permit shall be reviewed and approved by the city prior to issuance.

Orono, Minn., Code § 86-66(b) (2017) (emphasis added).

The Code also provides for an after-the-fact permit when work has been done on a property in violation of the Code, and that permit must be obtained by the property owner:

> *The owner and/or occupant of any property* upon which any work has been done in violation of any building code or zoning requirement shall be responsible for obtaining a permit and/or for correcting, removing or abating such violation within 30 days after notice from the city that such violation exists.

Orono, Minn., Code § 86-36 (emphasis added).  The fee associated with such an after-the-fact permit is "double the permit fee."  (Doc. No. 37-5 at 64:4–5.)  The only time an after-the-fact permit would not be granted would be if "the work that was done without a permit

was not permittable," in which case the property owner would be required to remove the unpermitted work they had performed. (*Id.* at 64:6–9, 66:15–24.)

A violation of the Code is a misdemeanor. *See* Orono, Minn., Code § 86-42 (citing Minn. Stat. § 326B.082).

**B.    Work Is Performed on the Nygards' Property Without a Permit**

In the late 1990s, Kendall and Jay purchased and began residing in a lakeshore home in Orono, Minnesota. (Doc. No. 37-4 at 10:12–20.) In 2017, Kendall began residing in Florida. (Doc. No. 43 ¶ 1.) Jay has remained in Minnesota. (*See id.*)

In 2019, the Nygards purchased their next-door neighbor's home in Orono (the Property). (*Id.* ¶ 3; Doc. No. 37-4 at 11:14–12:14, Ex. 1.) Prior to this purchase, the Nygards planned to replace the existing driveway at the Property. (Doc. No. 37-4 at 25:12–24, Ex. 1 at 3 (indicating that in August 2019, the Nygards represented to a bank that they planned to replace the existing driveway).) On October 2, 2019, Jay began corresponding with the City via email (copying Kendall) regarding his concern that the City was responsible for damaging the driveway on the Property. (Doc. No. 38-6 at 7–8.) Although a city inspector began an examination two days later (*id.* at 5–6), Jay sent another email to the City on October 16 explaining that he would resort to self-help and seek reimbursement from the City. (*Id.* at 5.) A city official responded to this ultimatum by informing the Nygards that the driveway had not been constructed properly and making recommendations for proper driveway construction in the event the Nygards wished to

replace it.[2]  (*Id.* at 4.)  Jay continued to express his disagreement with this, asserting that the City bore the responsibility to fix the driveway.  (Doc. No. 38-6 at 1–3.)

After the City received a complaint from a community member, City of Orono Building Official Roger Peitso visited the Property on October 25.  (Doc. No. 37-5 at 62:7–16; Doc. No. 37-12 at 57:23–58:10.)  Upon arrival, Peitso spoke with Jay, who had begun concrete work on the driveway without a permit.  (Doc. No. 37-12 at 64:1–14, Ex. 1; Doc. No. 37-5 at 61:11–62:16.)  Peitso informed Jay that he would need to apply for an after-the-fact permit for the driveway work; after his visit, Peitso provided Jay with the relevant internet links to do so.  (Doc. No. 37-12 at Ex. 1.)  The following day, Jay submitted an after-the-fact permit application but did not include the required permit fee.  (Doc. No. 38 ¶ 2, Ex. A.)  The application was accompanied by an aerial photograph of the Property, on which Jay had drawn where he had "[r]emoved [h]ardcover," where he had placed a "[n]ew [d]riveway," and where he intended to install a "wind turbine footing"[3] in the backyard.  (Doc. No. 38-2.)

---

[2] City of Orono Community Development Director Jeremy Barnhart testified that the environmental implications of proper driveway construction are important because the City is "in the shoreland area," which justifies the enforcement of "limitations on impervious surface or hardcover," and noting that "your proximity to the lake" determines "how much hardcover you can have."  (Doc. No. 37-5 at 14:9–11; *see also id.* at 64:19–65:3.)

[3] Jay has had an ongoing dispute with the City since 2010 about his ability to install wind turbines on his property.  *See Nygard v. City of Orono, et al.*, No. 23-CV-00509 (DWF/DLM), Doc. No. 64 (D. Minn. Jan. 5, 2024) (reviewing history of dispute and ancillary litigation and dismissing Jay's RICO, section 1983, and state-law claims against City related to City's disallowance of wind turbines on his property).

On October 29, the City sent Jay a "Builder Acknowledgment Form," which set forth the conditions under which the City would grant the after-the-fact permit, including the following:

> Driveway pavement should sit a minimum of 1 5/8 in above street pavement where the two intersect.
>
> . . . .
>
> "Wind Turbine footing" not permitted.
>
> Hardcover calculations include a 24-inch wide sidewalk from driveway to front door, per section 78-1683(3).

(Doc. No. 38-3; Doc. No. 38-4.)  The City asked for Jay's initials on each item.  (*See id.*)

Eventually, Jay returned the Builder Acknowledgment Form to the City, but when he did so, he did not agree to the City's conditions; he crossed out items related to the driveway construction and the wind turbine footing.  (*See* Doc. No. 38-8.)  On November 8, 2019, Barnhart informed Jay by letter that, because he struck through certain conditions on the Builder Acknowledgement Form, "the permit was not issued." (Doc. No. 38-11.) Barnhart encouraged Jay to sign the Builder Acknowledgment Form in full and pay the after-the-fact permit fee.  (*Id.*)  Kendall had been copied on—but did not engage in—most of the above-referenced correspondence between Jay and the City.  (Doc. No. 38 at Exs. F, J, M, O, P, Q, S.)

By December 12, 2019, Jay still had not acknowledged the City's permit conditions set forth in the Builder Acknowledgment Form or paid the required permit fee.  (*See* Doc. No. 38-18.)  Barnhart advised that, if Jay did not acknowledge the conditions in the form and pay the fee by the end of the day, the "matter will be turned over to the prosecuting

attorney." (*Id.*) The next day, after receiving no response, Barnhart sent an email to City Attorney Steve Tallen, asking him to "[p]lease file a citation to Jay Nygard and Kendall Nygard" for violating section 86-66(b) of the Code because "[t]hey have completed work without a permit and have spent the last 6 weeks arguing with me on requirements of the permit, after they installed the improvement." (Doc. No. 37-5 at 72:17–19, Ex. 1.) To support his prosecution referral, Barnhart sent Tallen the following information: a Code Enforcement Activity Report; a permit history report; a copy of the December 12, 2019 letter from Barnhart to Jay; correspondence between the City and the Nygards; a copy of the original Builder Acknowledgment Form. (*Id.* at Ex. 1.)

Barnhart, a non-lawyer, testified that he referred both Jay and Kendall for prosecution because he knew Kendall to be the co-owner of the Property and thus, in his view, responsible for pulling appropriate permits. Barnhart testified as follows:

> Q. Why did you include Kendall Nygard in this request [to Tallen] for a citation?
>
> A. Because she was a property owner.
>
> Q. All right. And in the next line where it says, "They have completed work without a permit," did you understand they to mean both Jay and Kendall Nygard?
>
> A. Yes, as property owners.
>
> . . . .
>
> Q. Did you know whether or not Jay Nygard had completed work on the driveway?
>
> A. I don't know who did the work, I know that the work was done on their property.

Q.  So, you did not know who had done the work on the driveway on their property?

A.  True.

. . . .

Q.  [W]ho did you argue with during the six weeks on the requirements of the permit?

A.  Jay.

Q.  Did you argue with Kendall about the requirements?

A.  No.

Q.  So, it wasn't accurate that they had spent the last six weeks arguing with you?

A.  Well, both Jay and Kendall have been in the emails back and forth, I don't know who writes them.  And I don't know who orders the work or who directs who to do any response back and forth.  So, it's a global they for the property owners.

(Doc. No. 37-5 at 79:20–81:13.)  Additionally, Barnhart testified that, when he referred the matter to Tallen, he had no knowledge that Kendall lived in Florida.  (*Id.* at 51:3–7.)

C.    **Criminal Prosecution**

On December 31, 2019, the City (via Tallen) filed two separate criminal complaints against Kendall and Jay for allegedly violating Code § 86-66.  *See State v. Nygard*, 27-CR-19-32127 (Minn. Dist. Ct. Dec. 31, 2019).  Tallen averred that the decision to bring charges against the Nygards was his alone—he did not speak to any elected officials about his charging decision and no elected officials reviewed the criminal complaints before they were filed.  (Doc. No. 39 ¶¶ 9, 10–11.)

The Statement of Probable Cause appended to the criminal complaint against

Kendall reads as follows:

> Your complainant is a police officer for the Orono Police
> Department. Your complainant has read the reports of Orono
> Community Development Director Jeremy Barnhart and
> believes the following to be true: Director Barnhart learned that
> work had been completed without having first obtained a
> permit on a home 1380 Rest Point Road in the City of Orono,
> Hennepin County, specifically, the driveway pavement does
> not sit at a minimum of 1 5/8 above the street pavement where
> the two intersect, the driveway that had been replaced was a
> non-conforming width and the hardcover calculations
> exceeded a 24-inch wide sidewalk from the driveway to the
> front door. The home is owned by Jay Thomas Nygard. . . and
> Kendall Mae Nygard . . . , the defendant herein. Accordingly,
> the City of Orono sent the Nygard[s] a letter informing them
> on the violation and instructing them that they need to pay the
> required permit fees to have the permit issued on or before
> December 12, 2019. The Nygard[s] failed to comply.

(Doc. No. 37-10 at 3.) Hennepin County District Court Judge Edward T. Wahl issued a

"Finding of Probable Cause," in which he wrote that he "determined that probable cause

exists to support" the charge against Kendall under section 86-66(b). (*Id.* at 4.)

A combined trial on the charges against both Nygards took place in August 2020.

(*See* Doc. No. 37-11.) During the trial, the Nygards' attorney moved to dismiss the charge

against Kendall. (*Id.* at 85:10–15.) Judge Wahl granted the motion on grounds that the

directives in section 86-66 refer to the person performing the work (as opposed to the

property owner) and the City could not prove Kendall's personal involvement in the alleged

underlying conduct. (*Id.* at 85:10–86:16.) Ultimately, Jay was acquitted. (*Id.* at 122:6–7.)

Judge Wahl noted at the end of trial that "the city acted in good faith and the Nygards acted

in good faith." (*Id.* at 118:10–11.)

### D.    Litigation in Federal Court

In March 2021, Jay and Kendall filed a six-count complaint against the City in federal court, which included several federal constitutional claims and state tort claims, including malicious prosecution. *See Nygard v. City of Orono*, 21-CV-00884 (NEB/JFD), Doc. No. 1 (D. Minn. Mar. 30, 2021). The Court granted the City's motion to dismiss the Complaint in its entirety. *See id.*, Doc. No. 22 (D. Minn. Aug. 11, 2021). The Nygards appealed that decision to the Eighth Circuit, which reversed and remanded only the dismissal of Kendall's malicious-prosecution claim. *See Nygard v. City of Orono*, 39 F.4th 514, 522–23 (8th Cir. 2022). On remand, the Court sua sponte dismissed the state-law malicious-prosecution claim without prejudice, which was the sole remaining claim, because the Court declined to exercise its pendent jurisdiction over it. *See Nygard v. City of Orono*, No. 21-CV-00884, Doc. No. 35 at 3 (D. Minn. Nov. 29, 2022).

In December 2022, Kendall filed this action. (Doc. No. 1.) In her one-count Complaint, she again brings a claim of malicious prosecution, but asserts that her diversity from the City (based on her residence in Florida) supports the Court's exercise of jurisdiction over her state-law claim. (*See id.* ¶¶ 1–3.)

## DISCUSSION

The City now moves for summary judgment on Kendall's malicious-prosecution claim. The Court grants the City's motion because the record presented could not support a finding of fact in Kendall's favor regarding malice, an essential element of her claim.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Of course, a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive the motion, the non-moving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). As is normally the case in a summary judgment motion, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255.

To prevail on her malicious-prosecution claim at trial, Kendall must establish each of the following four elements: (1) the City brought a prosecution against Kendall; (2) the City had no probable cause or reasonable belief that it would prevail on the merits; (3) the City took this action with malicious intent; and (4) the prosecution terminated in Kendall's favor. *See Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. App. 2006). Each element is separate and distinct. *E.g.*, *Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 645 (Minn. 1978) ("Want of probable cause may exist without malice." (quotation omitted)); *Bredehorst v. Robson Fuel Co.*, 195 Minn. 595, 596, 263 N.W. 609, 609 (1935) (observing that "termination of the case in plaintiff's favor does not make out a prima facie case of want of probable cause"). In addition, malicious-prosecution actions "ha[ve] always been carefully circumscribed, and not favored in law" because "public policy favors prosecutions and affords such protection of another in good faith and on reasonable grounds as is essential to public justice" and "not discouraging criminal investigations." *Lundberg v. Scoggins*, 335 N.W.2d 235, 236 (Minn. 1983) (quotation omitted). Though aspects of the essential elements of malicious prosecution typically present questions of

fact, *Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623, 634 (Minn. 2017), summary judgment is nonetheless proper when, as is the case here, a reasonable juror could not find facts in the plaintiff's favor based on the available evidence. *See Allen*, 265 N.W.2d at 642.

The malice element is established only if undisputed record evidence shows that the City "instituted a groundless prosecution knowingly and willfully." *Dunham*, 708 N.W.2d at 570, 570 n.4. Malice is not "the mere intentional doing of an act which is wrong," but, rather, it "requires that the actor *know* that it is wrong." *Allen*, 265 N.W.2d at 646 (emphasis added); *see also Crandall v. Miller & Stevens, P.A.*, No. 20-CV-1793 (ECT/LIB), 2021 WL 4595535, at *11 (D. Minn. Oct. 6, 2021) (providing that malice is "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right" (quoting *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991)). Kendall makes four distinct arguments in opposition to the City's request for summary judgment concerning the element of malice. (Doc. No. 42 at 30–34.) The Court addresses each in turn.

First, Kendall argues that the lack of probable cause to support her prosecution demonstrates malice. (Doc. No. 42 at 30–31.) But Minnesota law is clear that "[w]ant of probable cause may exist without malice." *Allen*, 265 N.W.2d at 645 (quoting *Hanowitz v. Great N. Ry. Co.*, 122 Minn. 241, 244, 142 N.W. 196, 197 (1913)). In other words, malice and probable cause are separate and distinct elements of a malicious-prosecution

claim; therefore, lack of probable cause, if any, is not proof of malice.[4]  *See id.*; *see also*

*Crandall*, 2021 WL 4595535, at *11 (rejecting plaintiff's argument that lack of probable

cause allowed for inference of malice in malicious-prosecution claim).  For this reason,

this argument is not persuasive.

---

[4] In some circumstances, malice may be inferred from the extent of the deficit of probable cause.  *See Osco Drug, Inc.*, 265 N.W.2d at 645.  Given the Court's decision concerning malice, the Court need not also address whether a genuine dispute of material fact exists concerning the essential element of probable cause.  Nevertheless, because the extent of a deficiency in probable cause can support an inference of malice, the Court notes its concern in this case that the record presented would not allow a reasonable trier of fact to find in Kendall's favor on the probable cause element, either.

To negate a malicious-prosecution claim," the City need only have a reasonable basis to suspect Kendall of being involved in the charged code violations.  *Allen*, 265 N.W.2d at 643 (defining probable cause as circumstances that would "warrant a cautious man in the belief that the person accused is guilty of the offense") (quotation omitted); *see also Dunham*, 708 N.W.2d at 568 ("Only reasonable belief that probable cause existed is necessary to negate a malicious prosecution claim.") (quotation omitted).  Here, Judge Wahl's determination that that the criminal charge was supported by probable cause creates a prima facie showing of probable cause that can be rebutted if Kendall can show a prosecutor's "reliance on intentionally false statements."  *Nygard v. City of Orono*, 39 F.4th 514, 521–22 (8th Cir. 2022) (quotations omitted).  Kendall directs the Court to no record evidence that could support a finding that Tallen relied on intentionally false statements.  Barnhart's inclusion of Kendall in his referral is not a false statement because Kendall does not dispute being a co-owner of the Property, that unpermitted work occurred at the Property, or that property owners bear responsibility for obtaining after-the-fact permits.  In addition, to the extent that Kendall argues Tallen did not sufficiently investigate the truthfulness of Barnhart's representations, such an argument is unsupported by the evidence presented, which can only support a contrary conclusion.  (*See, e.g.*, Doc. No. 39 ¶¶ 4–5 (containing Tallen's sworn statement that he "exercise[s] [his] own professional judgment regarding what charges are justified based on [his] review of the evidence in the file"), ¶ 8 (containing Tallen's sworn statement that he formed a belief "that the evidence supported bring[ing] charges . . . against both property owners" after reviewing materials "about the Nygards' driveway situation").)  There is no evidence in the record that conflicts with Tallen's representations or otherwise rebuts the prima facie showing of probable cause.  The Court's concern that a reasonable trier of fact could not find in Kendall's favor further undermines Kendall's first argument concerning malice.

Second, Kendall argues that Barnhart maliciously "lumped Kendall in with Jay" in his email referring the matter to Tallen, which led Tallen to believe that Kendall was involved in criminal activity. (Doc. No. 42 at 31.) However, Barnhart testified that he referred both of the Nygards for prosecution because they co-owned the Property and therefore, he believed both Nygards were responsible for obtaining required permits. (Doc. No. 37-5 at 79:20–81:13.) Barnhart also testified that he had no knowledge that Kendall lived in Florida at the time of the referral. (*Id.* at 51:3–7.) Kendall has identified no specific evidence that contradicts or conflicts with Barnhart's testimony. Thus, a reasonable factfinder cannot conclude that Barnhart had reason to know that Kendall was entirely uninvolved in the unpermitted work at the Property and in subsequent communications and decisions about it afterward.

Third, Kendall argues that the City's history of litigation against Kendall and Jay (specifically that two former mayors and a former city council member were involved with code enforcement disputes against the Nygards in 2013 and 2017) establishes Barnhart's malicious state of mind.[5] (*See* Doc. No. 42 at 32–33.) However, there is no record evidence that the former City Council member or former mayors played any role in Kendall's criminal prosecution, including Barnhart's decision to refer the matter for prosecution, or Tallen's decision to bring charges. Contrary to Kendall's argument, Barnhart provided testimony about his state of mind, explaining the following: he was unaware of any complaints about Kendall among city officials (Doc. No. 37-5 at 55:17–

---

[5] To support this assertion, Kendall's counsel provides imprecise record citations—i.e., counsel cites generally to a transcript that is over 300 pages.

22); he was unaware of any derogatory nicknames used by city officials to refer to either of the Nygards (*id.* at 56:14–20); he himself had not formed a strong impression about Jay and did not think about Jay or Kendall at all (*id.* at 47:10–17); he was unaware of "any bias of City staff against the Nygards" (*id.* at 118:8–17); when asked whether Barnhart ever "picked sides" when neighbors brought complaints against the Nygards or when the Nygards brought complaints against neighbors, Barnhart said "No" (*id.* at 122:7–123:12); Barnhart testified that the Nygards were not subjected to selective enforcement of the City Code (*id.* at 125:13–15); and, when asked whether he was aware other city officials gossiped and spread rumors about the Nygards, Barnhart testified that "it's not uncommon for individuals to chat about property owners and things, projects and applications," which are "general conversations you have in an office" that "don't carry any weight." (*Id.* at 129:12–24.)

Likewise, Tallen's testimony also conflicts with Kendall's argument. Tallen averred that he "did not speak about the matter with any elected officials for the City" before he filed charges, and that "[n]o outside parties contacted me to discuss the matter." (Doc. No. 39 ¶ 9; *see also id.* ¶¶ 10–11.) Kendall's factually unsupported speculation that Barnhart's actions were informed by a poor opinion of the Nygards or that Tallen's decisions were influenced by City officials' alleged animus, does not create a genuine dispute of fact. *Cf. Schmidt v. City of Bella Villa*, 557 F.3d 564, 575 (8th Cir. 2009) (affirming grant of summary judgment in favor of public officer on grounds that plaintiff's speculation and conjecture about ulterior motives "do[] not raise a genuine issue of fact regarding [the officer]'s alleged bad faith or malice").

14

Fourth, Kendall argues that Jay's dispute with the City about the permit conditions in the Builder Acknowledgment Form created malicious feelings in Barnhart toward her and Jay. (Doc. No. 42 at 33–34.) However, Kendall has not identified any record evidence that could possibly support a factual finding or an inference that the City acted in bad faith when listing the permit conditions or requesting Jay's acceptance of them. A good-faith disagreement simply is not malice.[6]

Finally, even assuming that a question of fact existed concerning whether Barnhart acted with malice, Kendall makes no argument that Tallen took any actions with malicious intent. It is undisputed that, when deciding whether to bring charges, Tallen reviews materials provided by city officials, but he "do[es] not file charges simply because of referral from City staff." (Doc. No. 39 ¶ 5.) Instead, Tallen "exercise[s] [his] own professional judgment regarding what charges were justified based on [his] review of the evidence in the file." (*Id.*) Tallen averred that there are instances (and provided examples) in which city officials will refer charges to him and that, after review, he declines to bring charges. (*Id.*, Ex. A.) Tallen further averred that, upon receiving materials from Barnhart about the Property, he "believed that the evidence supported bring[ing] charges for violating Orono, Minn., Code § 86-66(b) against both property owners." (*Id.* ¶ 8.) He averred that he "did not speak about the matter with any elected officials for the City before making the decision to bring the charges" and that "[n]o outside parties contacted me to

---

[6] Much of the basis for Kendall's malicious-prosecution claim rests on Judge Wahl's decision to dismiss the charges against her, but it is noteworthy that Kendall's argument here also contradicts Judge Wahl's conclusion that the city acted in good faith. (Doc. No. 37-11 at 118:10–11.)

discuss the matter." (*Id.* ¶ 9; *see also id.* ¶¶ 10–11; Doc. No. 37-5 at 32:16–33:1, 33:11–13, 73:7–74:15 (Barnhart did not recall discussing criminal prosecution with Tallen after referral).) This testimony is undisputed and absent any evidence and any argument that Tallen knew his actions were baseless when he decided to initiate prosecution, the Court is compelled to grant the City's motion.

In sum, Kendall directs the Court to no evidence in the record to support her belief that the City "instituted a groundless prosecution knowingly and willfully." *Dunham*, 708 N.W.2d at 570 n.4. Based on the record presented, no reasonable trier of fact could agree with Kendall's speculative assertions concerning the City's motives for prosecution. Accordingly, the Court grants summary judgment to the City.[7] *See Rosati v. Pine Cnty.*, 460 F. Supp. 3d 846, 863–64 (D. Minn. 2020) (granting summary judgment to defendant where plaintiff offered only speculation to establish malice); *Dunham*, 708 N.W.2d at 570 (affirming grant of summary judgment in favor of defendant in malicious-prosecution case where plaintiff speculated charges were brought with malicious intent but did "not support that speculation with admissible evidence").

---

[7] Given this decision, the Court need not also consider the City's arguments that it is immune from liability or Kendall's arguments that the City's malicious intent defeats its official immunity claim. *See Elwood v. Rice Cnty.*, 423 N.W.2d 671, 679 (Minn. 1988) ("Discretionary conduct is clearly *not* protected if the official committed a willful or malicious wrong." (emphasis in original)).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendant City of Orono's motion for summary judgment (Doc. No. 34) is GRANTED, and this action is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  December 27, 2024                         /s/ *Jeffrey M. Bryan*
                                                  Judge Jeffrey M. Bryan
                                                  United States District Court